ELECTRONICALLY FILED
Searcy County Circuit Court
Debbie Loggins, Circuit/County Clerk
2021-Mar-02 17:14:33
65CV-21-8
C20D01 : 7 Pages

# IN THE CIRCUIT COURT OF SEARCY COUNTY, ARKANSAS
## CIVIL DIVISION

**LARRY COX**                                                    **PLAINTIFF**

v.                             NO. _____

**WAL-MART STORES, INC.**                               **DEFENDANT**

## COMPLAINT

COMES NOW Plaintiff, by and through counsel, Wallace, Martin, Duke & Russell, PLLC, and for Plaintiff's Complaint, Plaintiff states:

### PARTIES AND JURISDICTION

1.      Plaintiff Larry Cox ("Cox") is a male resident and citizen of Searcy County, Arkansas who was formerly employed by Defendant. Defendant is a domestic corporation with regard to the State of Arkansas with its primary place of business located within the State of Arkansas.

2.      This is an action brought for discrimination and retaliation under the Americans with Disabilities Act as ("ADA"); for discrimination and retaliation under the Arkansas Civil Rights Act ("ACRA"); and for promissory estoppel. Since the acts giving rise to this action arose in Searcy County, Arkansas venue is proper. This Court has personal and subject matter jurisdiction over the parties.

### GENERAL ALLEGATIONS OF FACT

3.      Cox is male who suffers from an ongoing disability that affects his ability to lift, sit, stand, and walk.

4.      Cox worked as a truck driver for Defendant out of several distribution centers in Central and Northern Arkansas.

1

**EXHIBIT**

**1**

5.    At all times relevant, Cox performed all jobs assigned to Cox to the satisfaction of Defendant.

6.    In November 2019, per Defendant's written policies, Cox reported to Human Resources of the need to have back surgery based on an ongoing disability that affects Cox's ability to lift, sit, stand, or walk for long periods of time.

7.    Upon notification, Defendant required that Cox have the surgery at a Defendant approved hospital in Springfield, Missouri.

8.    This hospital was more than 100 miles from Cox's home, but he agreed to this demand as he was worried about losing his job if he failed to do so.

9.    Defendant required that Plaintiff wait until March 2020 to have this surgery as that was the first date available that Defendant could negotiate with its approved hospital.

10.   While Cox awaited surgery, Defendant placed Cox on FMLA leave as an accommodation for his disability.

11.   Prior to Cox's surgery, the national Covid-19 crisis began, and Defendant's chosen hospital canceled Cox's surgery date.

12.   Defendant's hospital refused to reschedule Cox's surgery date due to the ongoing Covid-19 pandemic and per state orders regarding such surgeries in the State of Missouri at the time.

13.   Cox asked Defendant to allow him to have the surgery at another hospital in Arkansas where the surgery would be allowed to proceed.

14.   Defendant agreed to allow Cox to get a surgery at a hospital not contracted by Defendant if Cox agreed to pay 25% of the costs of the surgery.

15.   Because Cox wanted to keep his job with Defendant and return to work as soon as possible, Cox agreed to pay this extra amount for the surgery.

16.   Cox's surgery was scheduled for June 16, 2020, and Cox informed Defendant of this date.

17.   In May 2020, Defendant's Human Resources HR called Cox and told Cox he was being fired if he did not return to work immediately.

18.   The person who called Cox was a woman named Henrietta Swinson ("Swinson").

19.   When Swinson called, Cox told her about what happened with his original surgery date, the agreement he had with Defendant, and his plan to return to work.

20.   Swinson made it clear to Cox that no one at Defendant cared what agreements had been made.

21.   Further, Swinson informed Cox of Defendant's intention to remove Cox from approved ADA leave and that Defendant would no longer pay for any part of his surgery under his health insurance with Defendant.

22.   Swinson insisted that Cox return to work immediately, cancel his surgery, and stop insisting on seeking any further accommodation for his disability.

23.   On June 10, 2020, six days prior to his surgery, Defendant fired Cox.

24.     Defendant claimed that Cox didn't show up to work, but his firing was in clear violation of his accommodation as agreed to under Defendant's own policies and in retaliation for Cox insisting that his rights not be violated by Defendant.

25.     Prior to the termination, Cox's doctor provided Defendant with a specific return to work date after the surgery in accordance with the ADA and ACRA.

26.     Upon information and belief, Cox was replaced by a person who is not disabled.

27.     Similarly situated persons who are not disabled who worked for Defendant who committed as serious or more serious offenses than those committed by Cox were allowed to retain their employment with Defendant.

28.     Defendant openly violated its own policies and procedures as outlined in its handbook that it wanted Cox to rely upon, knew that Cox relied upon it, Defendant used this reliance with an intention to harm Cox, and Cox was in fact harmed.

29.     Cox timely filed a Charge of Discrimination with the EEOC, and now timely files this action within ninety (90) days of receiving his Right to Sue Letter from the EEOC.

## COUNT I – ADA AND ACRA DISCRIMINATION AND RETALIATION

30.     Cox re-alleges the foregoing as if fully set out herein.

31.     Defendant all knew that Cox was disabled based on her open admissions of her disability and her seeking accommodation for that disability.

4

32.     When Defendant feared that Plaintiff's disability might result in her missing work at some future date based on the surgery she had just undergone, Defendant terminated Cox based on false accusations in flagrant violation of state and federal law.

33.     Similarly situated non-disabled employees of Defendant have not been terminated under the same circumstance under which Cox was terminated.

34.     As a direct and proximate cause of Defendant's acts and omissions alleged herein, Cox has suffered severe mental and emotional distress, lost wages, lost fringe benefits, and incurred other damages in an amount to be proven at trial.

35.     Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## COUNT II – PROMISSORY ESTOPPEL

36.     Cox re-alleges the foregoing as if fully set out herein.

37.     Defendant provided Cox with a handbook that included the process by which employees could seek accommodation and leave under the ADA if they met the overall requirements for such accommodation.

38.     Cox is a disabled person as that term is defined under both the ADA and the ACRA.

39.     Cox requested accommodation under the ADA in reliance on Defendant's handbook yet Defendant refused to engage in a good faith interactive process with Cox after removing Cox's accommodation with no notice and with no way for Cox to return to work.

40.    Cox's request for accommodation for his June 2020 surgery was not properly considered in accordance with Defendant's own policies in violation of Defendant's own handbook and policies.

41.    Cox reasonably regarded the procedures as outlined in Defendant's handbook as a promise to abide by state law, federal law, and Defendant's own internal procedures regarding ADA and ACRA.

42.    Defendant intended for Cox to regard Defendant's handbook as a promise that Defendant would abide by the procedures for leave and accommodation under the ADA as well as the ACRA as outlined in Defendant's handbook.

43.    Cox did, in fact, reasonably rely upon Defendant's promise to abide by its own procedures as outlined in Defendant's handbook.

44.    Defendant failed to abide by Defendant's own procedures as outlined in Defendant's handbook regarding leave and accommodation under the ADA as well as the ACRA.

45.    Due to Cox's reliance on Defendant's promise to abide by the procedures as outlined in Defendant's handbook, Cox has experienced an injustice in the form of his termination and has been damaged.

46.    As a direct and proximate cause of Defendant's acts and omissions alleged herein, Plaintiff has lost wages, lost fringe benefits, lost earning capacity, and incurred other damages in an amount to be proven at trial.

47.    Defendant's actions have been willful, such that the Cox is entitled to an award of liquidated and punitive damages.

WHEREFORE, Plaintiff prays for appropriate compensatory, liquidated, and punitive damages exceeding $75,000, reinstatement or front pay, for reasonable attorneys' fees, for costs, for a trial by jury, and for all other proper relief.


Respectfully submitted,


WALLACE, MARTIN, DUKE & RUSSELL, PLLC
Attorneys at Law
1st Floor, Centre Place
212 Center Street
Little Rock, Arkansas 72201
Attorney for Plaintiff


By:    _____ /s/ James Monroe Scurlock_____
James Monroe Scurlock, AR Bar No. 2012028
jms@WallaceLawFirm.com

7

**IN THE CIRCUIT COURT OF SEARCY COUNTY, ARKANSAS**
**20TH CIRCUIT DIVISION 1**

LARRY COX V WALMART INC

65CV-21-8

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

WALMART, INC.
c/o C T CORPORATION SYSTEM
124 WEST CAPITOL AVE
Suite 1900
Little Rock, AR  72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

James Monroe Scurlock
1st Floor, Center Place
212 Center Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

DEBBIE LOGGINS, CIRCUIT CLERK
CIRCUIT COURT OF SEARCY COUNTY
PO BOX 998
MARSHALL, AR  72650

CLERK OF COURT

Michelle Loggins

Michelle Loggins, DC

Date: 03/03/2021